UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

YUNHE B.,[1]

              Petitioner,

       v.

WARDEN OF THE CALIFORNIA CITY
CORRECTIONAL CENTER, et al.,

              Respondents.

No. 1:26-cv-03307-TLN-CKD

A# 213-197-736

**ORDER**

     This matter is before the Court on *pro se* Petitioner Yunhe B.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition") (ECF No. 1).  Respondents filed an opposition.  (ECF No. 6.)  For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to immediately release Petitioner.

///

///

///

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL BACKGROUND

Petitioner is a noncitizen who entered the United States without inspection on or about December 25, 2019, and immigration authorities placed him in expedited removal proceedings. (ECF No. 6 at 7.)  On January 31, 2020, he was released on parole into the United States after posting a $30,000 bond.  (*Id.* at 18.)  As a condition of his release, Petitioner states he voluntarily agreed to participate in the Intensive Supervision Appearance Program (ISAP), which includes electronic GPS monitoring.  (ECF No. 1 at 3.)  After his release, Petitioner states he complied with his reporting requirements, obtained work authorization, and maintained steady employment. (*Id.*; ECF No. 7 at 5.)  Petitioner has no criminal record.  (ECF No. 6 at 18.)

On June 21, 2021, an immigration judge ordered Petitioner removed.  (*Id.* at 21.) Although a final order of removal was issued, immigration authorities did not re-detain Petitioner to remove him.  Nearly five years later, on January 28, 2026, Petitioner reported to U.S. Immigration and Customs Enforcement ("ICE") "as instructed on his reporting requirements" and ICE took him into custody.  (*Id.* at 17.)  That same day, ICE cancelled Petitioner's $30,000 bond, which had secured his release for six years.  (ECF No. 1 at 4.)

Petitioner has now been detained for over four months.  (*Id.* at 1.)  He challenges his detention as violating his due process rights and seeks immediate release.  (ECF No. 1.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v.*

2

*Davis*, 533 U.S. 678, 687 (2001).

**III.    ANALYSIS**

Petitioner argues that his detention without a bond hearing violates his procedural due process rights.[2]  (ECF No. 1 at 4–6.)  In opposition, Respondents claim Petitioner has a final removal order which subjects him to mandatory detention under 8 U.S.C. § 1231.  (ECF No. 6 at 1.)  Respondents further claim that, once the 90-day removal period under 8 U.S.C. § 1231(a)(2) expired, "the authority for Petitioner's detention shifted to § 1231(a)(6)."  (*Id.* at 2.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas,* 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i.  Liberty Interest*

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).  To determine whether an individual's specific conditional release rises to the level of a protected liberty

---

[2]    Petitioner also claims that his detention violates the Fifth Amendment because it is prolonged (Claim One) and arbitrary and unreasonable (Claim Two).  (ECF No. 1 at 4–6.) Because this Court finds relief warranted under Petitioner's procedural due process claims, the Court declines to assess Claims One and Two in favor of judicial economy.

3

interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released in 2020 after posting a $30,000 bond. (ECF No. 6 at 18.) Petitioner maintains, and the Government does not contest, that he complied with the terms of his release. (ECF No. 1 at 2; *see generally* ECF No. 6.) Indeed, the Government claims Petitioner was detained due to his final order of removal, not for violating the conditions of his release. (ECF No. 6 at 2, 25.) Over the six years Petitioner spent on conditional release, he developed "enduring attachments of normal life" as described in *Morrissey*, 408 U.S. at 482. Petitioner obtained work authorization, maintained steady employment, and developed strong ties to his community. (ECF No. 1 at 3.) He has no criminal history. (ECF No. 6 at 18.) For these reasons, the Court finds Petitioner has a substantial interest in his continued freedom protected by the Fifth Amendment. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody.").

The fact that Petitioner has a final order of removal does not alter this Court's analysis. First and foremost, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Thus, even if ICE had discretion to arrest and detain Petitioner pursuant to the final order of removal, its exercise of that discretion must comport with due process. *See Garcia v. Andrews*, No. 1:25-CV-01006 JLT SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21, 2025) (finding statutory authority to revoke bond or parole "does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

Moreover, contrary to Respondents' assertion, a years-old final order of removal does not automatically mandate detention under 8 U.S.C. § 1231 without procedural safeguards. In

general, "when a [noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days ([ ] referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). During the limited removal period, detention is mandatory for the purpose of effecting removal. *See Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2)). After the removal period runs, "the Government 'may' *continue* to detain a[ ] [noncitizen] who still remains here or release that [noncitizen] under supervision." *Id*. (citing 8 U.S.C. § 1231(a)(6)) (emphasis added). Thus, § 1231(a)(6) allows for the *continued* detention of certain noncitizens already in detention, not re-detention of noncitizens at liberty. *See Diallo v. Joyce*, No. 25-CV-9909, 2025 WL 3718477, at *2 (S.D.N.Y. Dec. 23, 2025) (citing *Zadvydas*, 533 U.S. at 683). For noncitizens not in detention at the time the removal period runs, "the default status . . . [is] release on conditions, not detention." *Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025); *see also* 8 U.S.C. § 1231(a)(3) ("If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

Here, the parties agree Petitioner is subject to a final order of removal that was issued five years ago in 2021. (ECF No. 1 at 3; ECF No. 6 at 1; ECF No. 9 at 1.) Petitioner was not detained within the 90-day removal period following the finalization of his removal order. (*See generally* ECF Nos. 1, 6, 9.) Indeed, Respondents waited nearly five years, until January 28, 2026, to re-detain Petitioner at a routine ICE appointment. (ECF No. 6 at 2.) Because Petitioner was at liberty when the 90-day removal period ended, he is subject to the default position of supervision under § 1231(a)(3). *Alva*, 2025 WL 2419262, at *3. Therefore, Petitioner's detention is governed by § 1231(a)(3) rather than § 1231(a)(6). *See Diallo*, 2025 WL 3718477, at *2 (citing *Zadvydas*, 533 U.S. at 683); *see also Diaz v. Wofford*, No. 1:25-CV-01079-JLT-EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025) (finding that where a noncitizen's removal order "became final long ago . . . he is no longer even arguably subject to mandatory detention under § 1231(a)[(6)]," but is instead subject to supervision under § 1231(a)(3)).

Respondents cannot rely on 8 U.S.C. § 1231(a)(6) as the authority for Petitioner's re-detention after the 90-day removal period expired. Section 1231(a)(6) "isn't a free-roaming right

to arrest and detain people any time [ICE] sees fit[.]" *Diallo*, 2025 WL 3718477, at *2. That § 1231(a)(6) applies to continued detention and not re-detention is clear by the terms of its own text, wider statutory scheme, and relevant regulations. *Id.* (finding the "and, if released" language of § 1231(a)(6) reflects that the statute applies to individuals already in detention, the Government's reading would override § 1231(a)(3), and the regulations that operationalize § 1231(a)(6) refer to "continued detention"). Identifying the proper detention authority is critical because when a noncitizen is subject to supervision under § 1231(a)(3), the Government must follow certain procedures to revoke that supervision to take them into custody. *See* 8 C.F.R. §§ 241.4, 241.13.

Accordingly, the Court rejects Respondents' argument that Petitioner is subject to § 1231(a)(6) five years after his removal period concluded. Petitioner has a protected liberty interest in his continued freedom protected by the Due Process Clause.

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Petitioner was released from immigration custody six years ago, has work authorization, maintained steady employment, and developed strong ties to his community. (ECF No. 1 at 3.) Despite this, Petitioner has now been detained for over four months without prior notice or an opportunity to respond to the reasons for revocation of his release. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Accordingly, this factor weighs in favor of finding

Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at \*4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process as to his detention, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Because Petitioner has a final order of removal, the revocation of his release is governed by 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13. *Diaz*, 2025 WL 2581575, at \*4. These regulations allow ICE to re-detain a noncitizen "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon revocation, the noncitizen must "be notified of the reasons for the revocation of his or her release," and given "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). Neither process was followed here. *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency, 'has the duty to follow its own federal regulations.'") (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). As Petitioner was denied procedural safeguards to ensure his re-detention was justified, there is a serious risk of his liberty being erroneously deprived.

Finally, the Government's interest in detaining Petitioner without procedural safeguards is negligible. *R.D.T.M.*, 2025 WL 2686866 at \*6. The Government has put forth no compelling interest to support arresting and re-detaining Petitioner without notice or a hearing. Notice and custody determination hearings are routine processes for Respondents, and any delay in re-detention (if justified) for time to provide notice and a hearing would be minimal. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at \*3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."). Any burden associated with the provision of these processes does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.

The Court finds that, under these circumstances, Petitioner was entitled to notice and a hearing to determine whether re-detention was warranted.  Respondents did not provide either.  Thus, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. The Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2. Petitioner's Motion for TRO (ECF No. 2) and Petitioner's Motion for Immediate Release (ECF No. 7) are DENIED as moot.

3. Respondents' Motion to Dissolve Court's No-Transfer Order (ECF No. 9) is DENIED as moot.

4. Respondents must IMMEDIATELY RELEASE Petitioner **Yunhe B.** (A# **213-197-736**) from custody under the same conditions as an order of supervision.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  At the time of release, Respondents must **provide a copy of this Order to Petitioner** and return all of Petitioner's documents and possessions.

5. **Respondents must file a notice of compliance with this Order by June 16, 2026.**

6. Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections and 8 C.F.R. §§ 241.4, 241.13, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future (the previous request for travel documents is not sufficient for this purpose), or (b) Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

7. **The Clerk is directed to serve the California City Correctional Center with a copy of**

**this Order.**

8. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Dated: June 15, 2026

_____
Troy L. Nunley
Chief United States District Judge